**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| ROBERT ROSS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 4:20-cv-00447-SEP |
| | ) |
| UNKNOWN TEABO, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on the Plaintiff Robert Ross's ("Plaintiff") Motion for Leave to Proceed *in forma pauperis*. Doc. [3]. Having reviewed the Motion and the financial information submitted in support, the Court has determined that Plaintiff lacks sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $4.98. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss Plaintiff's Complaint without prejudice.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these

monthly payments to the Clerk of the Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

In support of his Motion to Proceed *in forma pauperis*, Plaintiff submitted a copy of his certified inmate account statement. Doc. [4]. The account statement shows an average monthly deposit of $24.89. The Court will therefore assess an initial partial filing fee of $4.98, which is 20 percent of Plaintiff's average monthly deposit.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The reviewing court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true but is not required to "accept as true any legal conclusion couched as a factual allegation") (internal quotation marks omitted).

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction"

means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a self-represented litigant who is currently incarcerated at the Jefferson City Correctional Center in Jefferson City, Missouri. At the time relevant to the Complaint, however, Plaintiff was an inmate at the Eastern Reception, Diagnostic and Correctional Center (ERDCC) in Bonne Terre, Missouri. He brings this action pursuant to 42 U.S.C. § 1983. His complaint names as defendants Correctional Officer Unknown Teabo, Lieutenant Kimberly Bennett, and Sergeant Unknown Lardurallo ("Defendants"). Defendants are sued in both their official and individual capacities. Doc. [1] at 2, 5-6.

In his "Statement of Claim," Plaintiff alleges that on September 28, 2019, while at ERDCC, Lieutenant Bennett "told [an] officer to assault [him] while [his] arms [were] in [the] food port." Doc. [1] at 3. This apparently occurred after Plaintiff declared he was suicidal. Doc. [1-1] at 1. More specifically, Plaintiff states that Lieutenant Bennett gave Sergeant Lardurallo "a directive to use equipment on [his] arms to force [his] arms back inside the food

3

port." Doc. [1] at 5.  Sergeant Lardurallo then gave Officer Teabo "the directive to assault [him] and he did."  According to Plaintiff, Officer Teabo used a "battle bracket" to "push, bend, or fold [his] arms into the food port."  Doc. [1] at 8.

Attached to the Complaint is an informal resolution request, an offender grievance, and a grievance appeal response.  Doc. [1-1].  The Court has reviewed these attachments and will treat them as part of the pleading.  *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes.").  The grievance appeal response that Plaintiff has provided states that Plaintiff "refused several verbal directives to submit to wrist restraints, to remove [his] arm from the food port door, and had threatened to harm staff." Doc. [1-1] at 4.

Plaintiff alleges that he suffered from "swelling and bruises and nerve damage" as a result of this incident.  Doc. [1] at 5.  He seeks "recommendations for better programs," better use-of-force policies, and asks to be awarded an amount of damages that the Court feels "is needed."  Doc. [1] at 7.  Plaintiff also wants Defendants to be punished for "assaulting" him.

## Discussion

Plaintiff is a self-represented litigant who brings this action under 42 U.S.C. § 1983, alleging excessive force and a failure to intervene against Lieutenant Bennett, Sergeant Lardurallo, and Officer Teabo.  For the reasons discussed below, the Court must dismiss this action for failure to state a claim.

### A.  Official Capacity Claims

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself."  *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017).  Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public

employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999); *see also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County") (internal quotation marks omitted); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Here, Lieutenant Bennett, Sergeant Lardurallo, and Officer Teabo are all alleged to be employees of the ERDCC, which is an institution of the Missouri Department of Corrections. As such, Plaintiff's official capacity claims against them are actually claims against the State of Missouri itself.

To the extent that Plaintiff is seeking monetary damages, Plaintiff's official capacity claims must be dismissed because he is missing an essential element of a 42 U.S.C. § 1983 claim. Specifically, § 1983 "provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008); *see also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will*, 491 U.S. at 71; *see also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "State is not a person under § 1983"); *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (stating that "a state is not a person for purposes of a claim for money damages under § 1983"). Moreover, an official capacity suit for money damages against a state official is barred by the doctrine of sovereign

5

immunity. *See Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (explaining that a state official may be sued in his or her official capacity for injunctive relief without violating the Eleventh Amendment).

To the extent that Plaintiff is seeking injunctive relief, he has not alleged sufficient facts to hold the State of Missouri liable for violating his constitutional rights. *See Kelly*, 813 F.3d at 1075 (stating that in order to prevail on an official capacity claim, the plaintiff must establish the governmental entity's liability for the alleged conduct). Such liability may be shown by identifying an unconstitutional policy, custom, or failure to train. *See Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018) (stating that liability may attach to a governmental entity if a constitutional violation resulted from an official policy, an unofficial custom, or a deliberately indifferent failure to train or supervise). Thus, Plaintiff has three ways in which to prove the State of Missouri's liability.

First, Plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the . . . official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a [governmental entity] should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted

6

and promulgated by the [governmental entity's] governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, Plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, Plaintiff must demonstrate:

>    1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
>    2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
>    3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, Plaintiff can sustain a claim against the State of Missouri by establishing a deliberately indifferent failure to train or supervise. To do so, Plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the Complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Here, Plaintiff has not adequately alleged an unconstitutional policy, an unconstitutional custom, or a deliberately indifferent failure to train. With regard to policy, Plaintiff points to no "policy statement, ordinance, regulation, or decision officially adopted and promulgated by the

[governmental entity's] governing body" as being at issue. *Angarita*, 981 F.2d at 1546. With regard to custom, he has not pled the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees," much less that policymakers were deliberately indifferent to or tacitly authorized such misconduct. *Johnson*, 725 F.3d at 828. Finally, with regard to a failure to train or supervise, Plaintiff has not alleged a "pattern of similar constitutional violations by untrained employees." *Lincoln Cty.*, 874 F.3d at 585. To the contrary, his Complaint concerns a single incident that allegedly took place on September 28, 2019.

For all the reasons discussed above, Plaintiff has failed to state official capacity claims against Lieutenant Bennett, Sergeant Lardurallo, and Officer Teabo. Therefore, such claims must be dismissed.

### B.  Individual Capacity Claims

Plaintiff has accused Lieutenant Bennett, Sergeant Lardurallo, and Officer Teabo of excessive force and failure to intervene. The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992); *see also Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014) ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment.") (internal quotation marks omitted). When a prison official is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017)*; see also Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards are liable only

if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically.") (internal quotation marks omitted).  The factors to be considered in determining whether force was used in good faith include "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted."  *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

      A correctional officer can also be held liable under the Eighth Amendment for failing to intervene in another officer's constitutional violation.  *See Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981) (determining that a deputy could be held "jointly liable for failing to intervene if a fellow officer . . . was using excessive force and otherwise was unlawfully punishing the prisoner"); *Buckner v. Hollins*, 983 F.2d 119, 121-22 (8th Cir. 1993) (determining that state corrections officer had a duty to intervene on behalf of inmate being assaulted by a county corrections officer).  "A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault."  *Williams v. Mueller*, 13 F.3d 1214, 1216 (8th Cir. 1994).

      Here, Plaintiff has not pled sufficient facts to support a conclusion that Defendants violated the Eighth Amendment.  In particular, the facts pled do not support the contention that the force used against Plaintiff was malicious and sadistic.  Rather, Plaintiff pleads that he claimed to be suicidal.  Officers came to his cell, at which point Plaintiff acknowledges that his arms were in the food port, that he was holding the food port, and that force was used to remove his arms from the food port.  These facts suggest that, contrary to Plaintiff's assertions, the force used against him was for the purpose of maintaining discipline.

      Plaintiff's sole attempt to show that Defendants' use of force was excessive is his characterization of the incident as an "assault."  That is, Plaintiff alleges that Lieutenant Bennett

and Sergeant Lardurallo ordered Officer Teabo to "assault" him, and that he was then assaulted. Without any supporting facts, Plaintiff's use of the word "assault" amounts to a legal conclusion, which the Court is not required to accept as true. *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) ("Courts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level."). Not only is this particular conclusion not supported, it is belied by the facts in the Complaint. As previously noted, Plaintiff states that he declared he was suicidal and admits that his arms were in the food port. Moreover, the exhibits attached to the Complaint indicate that Plaintiff refused verbal directives and threatened to harm staff.

The Eighth Amendment does not prohibit the use of any force; it prohibits only excessive force. In this case, nothing in the "Statement of Claim" indicates that Defendants' use of force was unjust, malicious, or sadistic, thereby making it excessive. And because Plaintiff has not sufficiently pled that he was wrongfully assaulted, it follows that his failure to intervene claim is also insufficient. Since Officer Teabo's use of force was not a constitutional violation, Lieutenant Bennett and Sergeant Lardurallo were not required to intervene. For these reasons, Plaintiff's individual capacity claims against Bennett, Lardurallo, and Teabo must be dismissed.

### C. Motion to Appoint Counsel

Plaintiff has filed a Motion to Appoint Counsel. Doc. [2]. Because this case is being dismissed for failure to state a claim, the Motion will be denied as moot. *See* 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Doc. [3]) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff must pay an initial partial filing fee of $4.98 within twenty-one (21) days of the date of this order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it:  (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Appointment of Counsel (Doc. [2]) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice for failure to state a claim.  *See* 28 U.S.C. § 1915(e)(2)(B).  A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this <u>26th</u> day of <u>August</u>, 2020.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE
